FILED

2008 Mar-31  AM 10:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| SAMMY EDWARD SIMPSON, II, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 7:06-CV-04740-LSC |
| | ] | |
| STATE OF ALABAMA DEPARTMENT | ] | |
| OF HUMAN RESOURCES, MARSHALL | ] | |
| COUNTY DEPARTMENT OF HUMAN | ] | |
| RESOURCES, DEKALB COUNTY | ] | |
| DEPARTMENT OF HUMAN | ] | |
| RESOURCES, ETOWAH COUNTY | ] | |
| DEPARTMENT OF HUMAN | ] | |
| RESOURCES, JACKSON COUNTY | ] | |
| DEPARTMENT OF HUMAN | ] | |
| RESOURCES, and JEFFERSON | ] | |
| COUNTY DEPARTMENT OF HUMAN | ] | |
| RESOURCES, | ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION _____

I.      Introduction.

The Court has for consideration Defendants Alabama State Department

of Human Resources's, Marshall County Department of Human Resources's,

DeKalb  County  Department  of  Human  Resources's,  Etowah  County

Department of Human Resources's, Jackson County Department of Human Resources's, and Jefferson County Department of Human Resources's Motion for Summary Judgment (Docs. 32 & 36),[1] filed on December 19, 2007. Plaintiff Sammy Edward Simpson, II ("Simpson") filed suit against Defendants pursuant to the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794 and 28 U.S.C. § 1343(4). Plaintiff claims that he was terminated/constructively discharged from his employment because of his disability in violation of the Rehabilitation Act by Alabama State Department of Human Resources and Marshall County Department of Human Resources.[2] In addition, Plaintiff alleges that Alabama State DHR, Marshall County DHR, DeKalb County DHR, Jackson County DHR, and Jefferson County DHR failed to hire him because of his disability in violation of the Rehabilitation Act. The issues raised in Defendants' motion have been briefed by the parties and are now ripe for

[1]Defendants originally filed a Motion for Summary Judgment (Doc. 32) on December 13, 2007. This motion did not comply with this Court's Uniform Initial Order (Doc. 10); therefore, Defendants were given eleven days to show cause as to why the motion should not be stricken. In response, Defendants filed the amended motion for summary judgment on December 19, 2007. (Doc. 36.) Therefore, Defendants' original motion for summary judgment (Doc. 32) is due to be found moot. The Court will address only the issues raised in Defendants' amended motion for summary judgment (Doc. 36) and the responses thereto.

[2]"Department of Human Resources" will be hereinafter referred to as "DHR."

consideration.  Upon full consideration of the legal arguments and evidence presented, Defendants' motion for summary judgment is due to be granted.

II.    Facts.[3]

The plaintiff, Sammy Simpson, began employment with DHR in 2004 as a social worker.  Simpson earned a bachelor's degree in social work from Jacksonville State University and is a licensed social worker in the State of Alabama.   While attending Jacksonville State University, Simpson earned grades high enough to qualify him for admittance to two honor societies: the Pinnacle Honor Society, a school-wide honor society, and Phi Alpha Honor Society, an honor society for social workers.

Before commencing employment work with the Marshall County DHR, Simpson worked as a social work intern with a licensed clinical social worker.  While working as an intern, Simpson met a female client of the licensed clinical social worker.   After leaving the internship, Simpson

---

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

contacted the woman and began a relationship with her.

On August 10, 2004, Simpson began his employment with the State of Alabama DHR and the Marshall County DHR as a social worker. On November 24, 2004, Simpson's supervisor, Wayne Sellers, informed Plaintiff that he was being terminated from his employment. Sellers gave Plaintiff the option of submitting a letter of resignation in lieu of termination. Sellers informed Simpson that the relationship between Simpson and the female client, who Simpson met while doing his internship, had been reported to DHR, and that, based on this inappropriate relationship between a social worker and a current or former client, Simpson could either resign or be terminated. Plaintiff claims that he never knew the female was a client of DHR; however, he testified that he knew she was a client of the agency where he did his internship. (Simpson Dep. at 25-28; Sellers Dep. at 27.) Plaintiff chose to resign from employment, and on December 10, 2004, Plaintiff's employment with DHR ended.

After resigning from DHR, Plaintiff was employed by Crossville Nursing Home in January of 2005 as a social worker. However, he was terminated from this employment approximately five to six months later due to

improperly transferring a patient.

In addition, after resigning, Plaintiff was placed back on the state register and was considered eligible for social work positions. Plaintiff has been interviewed for positions with Marshall County DHR, DeKalb County DHR, Jackson County DHR, and Jefferson County DHR. However, to date, Plaintiff has not been hired by any of the entities with which he interviewed or by the State of Alabama DHR.

In October 2006, Plaintiff filed for Social Security Income Disability benefits, which he now receives.

In regard to his alleged disability, Simpson claims that he has been diagnosed with psychosis, a history of attention deficit hyperactivity disorder ("ADHD") and a possible attention deficit disorder ("ADD") adult type, and a special learning disability ("SLD")[4]. In his complaint, Simpson states that these conditions substantially limit one or more of his major life activities. He also states that he has a record of disability through his diagnoses and individual education plans ("IEP") while he was attending

---

[4]While Plaintiff uses the term "special learning disability," the Vocational Evaluation Report indicates that it is a "specific learning disability." Therefore, these terms may be used interchangeably throughout this Opinion.

school.  Plaintiff claims that he was terminated/constructively discharged from Marshall County DHR and the State of Alabama DHR and not hired by any of the Defendants based on his disability.

According to Simpson, at some time after his initial employment with the Marshall County DHR, all of the defendants became aware of his disabilities and his record of disability.  Simpson claims that while he was employed with the Marshall County DHR, he informed his supervisor Wayne Sellers, along with Heather Lowe, Susan Smith, and a co-worker, that he suffered from ADHD and a special learning disability.  (Sam Simpson Decl. ¶¶ 4-5, 8.)  Also, Simpson's mom, Renee Simpson, allegedly contacted Sellers prior to Simpson's termination and informed him of Simpson's disability stating that Simpson was a special needs student, had an IEP in high school, was a vocational rehabilitation client, took medication, and had been diagnosed with ADHD and a SLD.  (Renee Simpson Dec. ¶¶ 3, 7, 10.)  In addition, interview notes from Simpson's interview with Jefferson County DHR indicate that Simpson informed the interviewer of his ADHD.  (Beasley Dep. Ex. 4 at 3.)  Further, Simpson claims that knowledge of his disability can be imputed to other agencies based on the facts that he had previously

worked for DHR, DHR was involved in the hiring process, and a DHR employee knew of Simpson's disability.

III.    Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.

1996).

Once the moving party has met this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d at 1224 (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

"[A]t the summary judgment stage the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). However, judges are not "required to submit a question to a jury merely because some evidence has been introduced by a party having the burden of proof, unless the evidence be of such character that it would warrant the jury finding a verdict in favor of that party." *Id.* at 251 (*quoting Wilkerson v. McCarthy*, 336 U.S. 53, 62 (1872)). "This

standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250.

IV.   Discussion.

In his complaint, Simpson claims that Defendants violated the Rehabilitation Act because the State of Alabama DHR and Marshall County DHR intentionally discriminated against him by terminating/constructively discharging him because of his disability; and because the State of Alabama DHR, Marshall County DHR, DeKalb County DHR, Jackson County DHR, and Jefferson County DHR intentionally discriminated against him in regard to hiring because of his disability.[5]

---

[5]The legal standard for Plaintiff's claims brought under the Rehabilitation Act, the termination because of his disability and the failure to hire because of his disability, is the same.  *See* 14A C.J.S. *Civil Rights* § 279 (2006)("The Rehabilitation Act and the regulations promulgated to implement it were designed to . . . thwart discrimination in the hiring and firing of individuals with disabilities. . . ."); *Pickney v. Potter*, 186 Fed. Appx. 919, 923 (11th Cir. 2006)(Rehabilitation Act claim for failure to hire, where the court set out the standard for prima facie case stating that the plaintiff must establish that he is disabled, a qualified individual, and that the defendant refused to hire him because of the disability); *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1226 (11th Cir. 2005)(where the court set out the standard for a claim under Rehabilitation Act for termination because of a disability, the court indicated that plaintiff must show he was disabled, a qualified individual, and fired because of the disability).

The Rehabilitation Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999)(citing 29 U.S.C. § 791). Claims under the Rehabilitation Act are analyzed under the three-part test outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir.2000)(*McDonnell Douglas* framework applies to ADA disability discrimination claims). First, the plaintiff must present a prima facie case of disability discrimination. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004). If the plaintiff establishes a prima facie case, the defendants may rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once the defendants have rebutted the plaintiff's prima facie case, the plaintiff bears the burden of establishing that the defendants' reason is pretextual. *Id.*

In order to establish a prima facie case of discrimination under the Rehabilitation Act, the plaintiff bears the burden of establishing that "(1) []he had a disability; (2) []he was otherwise qualified for the position; and (3) []he was subjected to unlawful discrimination as the result of [his]

disability."[6]  *Garrett v. Univ. of Ala. at Birmingham Bd. of Trustees*, 507 F.3d 1306, 1310 (11th Cir. 2007)(citing *Sutton*, 185 F.3d at 1207).

A.    Disability.

In analyzing claims under the Rehabilitation Act, the initial inquiry is whether the plaintiff's alleged medical problems or diagnoses rise to the level of a disability.  *See Cash*, 231 F.3d at 1305.  The Act provides that an "individual with a disability" means any person who:

> (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities;
> (ii) has a record of such an impairment; or
> (iii) is regarded as having such an impairment.

29 U.S.C. § 705(20)(B)(2006); *see also* 42 U.S.C. § 12102(2)(2006);[7] *Sutton*, 185 F.3d at 1208.  Plaintiff seems to allege in his complaint that he is disabled under all three of the alternate statutory definitions of that term.[8]

─────────────────

[6]The standard for determining liability under the Rehabilitation Act is the same as under the American with Disabilities Act ("ADA").  *See Sutton*, 185 F.3d at 1207 (citing *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 910 (11th Cir. 1996)).  Therefore, cases decided under the Rehabilitation Act serve as precedent for cases under the ADA, and vice versa.  *See Cash v. Smith* 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

[7]42 U.S.C. § 12102 provides the definition of "disability" under the ADA.

[8]In the Complaint, Plaintiff asserts that he has a disability "in that he has a physical/ mental impairment which substantially limits one or more of his major life activities." (Compl. at ¶ 3.)  "Plaintiff is also perceived as having a disability which substantially limits his ability to work."  *Id.*  In addition, "Simpson has a record of a disability through

As such, the Court will analyze whether Plaintiff has raised a genuine issue of material fact as to whether he is disabled under each of the three alternate definitions.

       1.   Impairment which substantially limits major life activities.

The first definition of "disability" provided by the Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities."  29 U.S.C. § 705(9)(B)(2006).  This definition of "disability" involves a three-step analysis.  *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004)(citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)); *see also Faust v. Pemco*, 226 Fed. Appx. 887 (11th Cir. 2007).  First, the court will consider whether a plaintiff's condition constitutes a physical or mental impairment.  *See id.*  Second, the life activity the plaintiff claims has been limited must be a "major life activity" under the Rehabilitation Act.  *See id.*  According to the regulations, "[m]ajor life activities means

---

his diagnoses and an IEP while he was in school."  *Id.* at ¶ 12.  However, in Plaintiff's brief in opposition to the motion for summary judgment, Plaintiff states only that he can show that he has a mental impairment which substantially limits one or more of his major life activities and can show that he has a record of such impairment.  (Doc. 41 at 13.)  Therefore, Plaintiff appears to abandon his argument that he is perceived as having such an impairment.  In an abundance of caution, the Court will address all three methods of establishing a disability within the meaning of the Rehabilitation Act.

functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)(2007); *see also Cash*, 231 F.3d at 1305; 34 C.F.R. § 104.3(j)(2)(ii)(2007). While this list is not exhaustive, it is deemed to apply "to those basic activities that the average person in the general population can perform with little or no difficulty." 29 C.F.R. app. pt. 1630 (2007). Finally, the plaintiff must establish that the impairment "substantially limits" the major life activity that he has identified. *See Rossbach*, 371 F.3d at 1357. The terms "major life activities" and "substantially limits" are to be strictly interpreted "so as 'to create a demanding standard for qualifying as disabled. . . .'"[9] *Garrett*, 507 F.3d at 1311 (quoting *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002)).

First, it is important to consider whether Plaintiff's conditions constitute a mental impairment. A mental impairment has been defined as "any mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning

---

[9]Since the Rehabilitation Act does not define "major life activities" or "substantially limits," courts turn to the regulations of the Equal Employment Opportunity Commission ("EEOC") for guidance. *See Garrett*, 507 F.3d at 1311; *Gordon*, 100 F.3d at 911.

disabilities." 45 C.F.R. § 84.3(j)(2)(i)(2007).  Plaintiff claims that he suffers

from attention deficit hyperactivity disorder ("ADHD"),a special learning

disability ("SLD"), and psychosis.[10]  Viewing the facts in the light most

favorable to Plaintiff, this Court will assume for purposes of this analysis

that Plaintiff actually suffers from ADHD, SLD, and psychosis.[11]  Under

regulations issued by the Department of Health, Education, and Welfare

pursuant to the Rehabilitation Act of 1973, "ADHD qualifies as a 'physical or

mental impairment.'" *Knapp v. City of Columbus*, 192 Fed. Appx. 323, 328

(6th Cir. 2006)(citing 45 C.F.R. § 84.3(j)(2)(i)(A)); *see also Davidson v.*

*Midelfort Clinic, Ltd.*, 133 F.3d 499, 506 (7th Cir. 1998)("There is no dispute

that ADD qualifies as an impairment for purposes of the statute.").  In

addition, it appears to be undisputed that ADHD and SLD qualify as

―――――――――――――

[10]Defendant argues that Plaintiff improperly tried to change his allegation of disability by adding "psychosis" to the claim in the Joint Status Report.  (Doc. 36.)  Without addressing the issue of whether the addition of psychosis without an amendment to the complaint is proper, even taking into account psychosis, summary judgment is due to be granted.

[11]The only evidence that Plaintiff has presented indicating that he has been diagnosed with ADHD, a SLD, and psychosis is in the form of a Vocational Evaluation Report, which provides the diagnoses of such mental conditions.  (Simpson Dep. Ex. 13.)  In the report, it indicates that Godehard Oepen, M.D., Ph.D. diagnosed Plaintiff with psychosis (most likely paranoia), a history of ADHD in childhood and possible ongoing ADD adult type; and that  William B. Meneese, Ph.D diagnosed him with a specific learning disability.  *Id.* at 1.

impairments.

Next, the Court must consider whether the activities that Plaintiff

claims are limited by his mental condition constitute major life activities.

The United States Supreme Court in *Bragdon* "made clear that the court, in

making determinations of law . . . is to analyze only the major life activity

asserted by the plaintiff." *Poindexter v. Atchison, Topeka & Santa Fe Ry.*

*Co.,* 168 F.3d 1228, 1231-32 (10th Cir. 1999)(citing *Bragdon*, 524 U.S. at 637-

39). Plaintiff asserts that his mental condition substantially limits his ability

to perform the major life activity of learning.[12]  In addition, Plaintiff

contends that he is perceived as having a disability which substantially limits

his ability to work.  Learning and working are recognized major life

---

[12]Defendant contends that Plaintiff improperly tries to change his allegation from "substantially limits his ability to work" in the Complaint to "substantially limits at least one major life activity-learning" in the Joint Status Report.  (Doc. 36 at 18.)  However, in Plaintiff's Complaint, he asserts that his "conditions substantially limit one or more major life activities."  (Compl. at ¶¶ 3 & 12.)  He further claims that he is "also perceived as having a disability which substantially limits his ability to work."  *Id.* at ¶ 3.  Viewing these allegations in the light most favorable to Plaintiff, it does not appear that Plaintiff limited himself to the major life activity of working in his complaint since the perception of being substantially limited in his ability to work was how the employer "regarded" Plaintiff.  Plaintiff appears to abandon any allegation that he is substantially limited in his ability to work, since he only addresses the major life activity of learning in his brief, and cites the idea that he is substantially limited in the major life activity of working only for purposes of how he was perceived.  However, in order to be thorough, this Court will consider whether Plaintiff's impairments substantially limited his ability to learn and work.

activities.  *See* 29 C.F.R. § 1630.2(i).

Further, the Court must determine whether Plaintiff's mental condition "substantially limits" the major life activity identified.  Simpson cannot qualify as disabled under the Rehabilitation Act simply because his mental condition impairs or hinders his ability to learn and/or work.  Rather, these major life activities must be *substantially limited*.

The EEOC defines "substantially limits" to mean: "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j)(1).[13]  The regulations also state that the following factors should be considered when determining whether an individual is substantially limited in a major life activity: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of

---

[13]*See also Nadler v. Harvey,* 2007 WL 2404705, at *6 (11th Cir. 2007)(citing 29 C.F.R. § 1630; *Toyota Motor Mfg.,* 534 U.S. at 196).

the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *Id.* at § 1630.2(j)(2). There is no such thing as a "per se" disability. Rather, the determination of "whether a person has a disability under the [Rehabilitation Act] is an individualized inquiry." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999); *see also Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1330 (11th Cir. 2001) ("We look at [the plaintiff's] individual circumstances."). It is incumbent upon a plaintiff to establish evidence "that the extent of the limitation . . . in terms of his own experience . . . is substantial." *Toyota Motor Mfg.*, 534 U.S. at 198-99 (citation omitted); *see also Cash*, 231 F.3d at 1306.

      a.    Learning.

In addition to the fact that the term "substantially limits" is to be strictly interpreted, courts analyzing whether an impairment substantially limits the major life activity of learning have also noted that the definition of disability "is phrased in the present tense." *See Toyota Motor Mfg.*, 534 U.S. at 197; *Davidson*, 133 F.3d at 508. The determination of whether a person is disabled requires "that a person be presently—not potentially or

hypothetically—substantially limited in order to demonstrate a disability."
*Sutton v. United Air Lines, Inc.*, 527 U.S. at 482. Therefore, it is necessary for a plaintiff to prove that he suffered from a learning disability at the time of the discrimination. *See id.*; *Davidson,* 133 F.3d at 508.

In this case, Plaintiff has failed to provide sufficient evidence of mental conditions that amounts to a substantial limitation of the major life activity of learning for purposes of the Rehabilitation Act. Plaintiff claims that his history of mental conditions, his diagnosis of a learning disability, and his required accommodation of extended time in school is sufficient to establish a disability. Simpson has presented evidence indicating that he was diagnosed with a specific learning disability with respect to processing speed due to his poor scores on tests and his history, and that he has a weakness with respect to written expression.[14] (Simpson Dep. Ex. 13 at 3.) However, this does not prove that Plaintiff has a qualifying disability. Since human intellect, talents, and industry are not uniform, "[i]nadequate performance in certain life endeavors does not necessarily reflect any

---

[14]The evidence indicates that Plaintiff's capability with respect to written expression is merely a weakness and that his scores do not substantiate a learning disability. (Simpson Dep. Ex. 13 at 3.)

disability in learning."  *See Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 771 (8th Cir. 2004).  It is "insufficient" for a plaintiff to prove disability status through the mere submission of evidence of a medical diagnosis of an impairment.  *Toyota Motor Mfg.*, 534 U.S. at 198.  Rather, a plaintiff must offer evidence that addresses the extent to which his impairment limits him "in terms of [his] own experience."  *Id.* (quoting *Albertson's, Inc. v. Kirkinburg*, 527 U.S. 555, 567 (1999)).  Simpson has failed to present evidence of how his diagnoses substantially limit his ability to learn, other than to merely state that he has a learning disability and requires accommodations and assistance.  In addition, the evidence presented by Plaintiff showing that he has a long history of mental conditions, was diagnosed with a learning disability while in school, and received accommodations and assistance from organizations such as vocational rehabilitation throughout his education does not establish that his mental condition currently substantially limits his ability to learn.  *See Davidson*, 133 F.3d at 508 (plaintiff claimed to suffer from ADD and provided evidence that the ADD had limited her ability to learn in high school, college and graduate school, but that there was "little or no evidence in the record

establishing that ADD presently inhibits her capacity to learn").

While Plaintiff claims he is substantially limited in his ability to learn, the evidence regarding his mental capability and intellectual ability tends to indicate that Plaintiff is not substantially limited in his ability to learn. On individual intelligence assessments conducted while Plaintiff was in high school, Plaintiff scored in the average intelligence range.  (Simpson Dep. at 90-91.)  Also, in the March 14, 2006 Vocational Evaluation Report,  the same report which diagnosed Plaintiff with a specific learning disability, Plaintiff's overall intellectual ability was assessed as average.  (Simpson Dep. Ex. 13 at 3.)  The Report indicates that Plaintiff's scores on all of the tests combined place Plaintiff's overall learning ability within the average range. (Simpson Dep. Ex. 13.)  While Plaintiff scored in the low range on certain areas of the tests, these factors were taken into account in the conclusion that, overall, Plaintiff's learning ability was in the average range.  *See Calef v. Gillette Co.,* 322 F.3d 75, 84 (1st Cir. 2003)(where ADHD plaintiff scored "significantly below average" on various tests, but had an overall learning ability within the average range, the court held that the evidence did not support a substantial limitation on learning); *see also Phillips v. Wal-Mart*

*Stores, Inc.*, 78 F. Supp. 2d 1274, 1283 (S.D. Ala. 1999)(although plaintiff's performance test indicated a mild weakness in some areas, the test also indicated that plaintiff could learn new job skills; therefore, the court held that plaintiff's evidence did not demonstrate that his impairments substantially limit his ability to learn).  In addition, the evaluation stated that "Sam's ability to learn new information proved to be a strength for him during testing.  This was in verbal and visual format." (Simpson Dep. Ex. 13 at 3.)   His comprehension of information, vocabulary, and recall of information were found to be in the average range.  *Id.*  The evaluation further stated that Simpson's abilities included his math computation and word problems, non-verbal reasoning, and reading comprehension with extended time.  *Id.*  Therefore, while Plaintiff's evaluation report may have indicated a weakness in some areas, it shows that, overall, Plaintiff is of average intelligence, demonstrating that his impairments do not substantially limit his ability to learn.

In addition, Plaintiff's education and other life experience indicates that there is no substantial limitation on Plaintiff's learning ability.  Simpson has successfully earned his bachelor's degree in social work and passed the

state licensing exam for social workers.[15]  (Simpson Dep. at 15.)  *See Leisen v. City of Shelbyville*, 153 F.3d 805, 808 (7th Cir. 1998)(where plaintiff repeatedly failed the paramedics course yet successfully completed other training courses, the court held that plaintiff was not substantially limited in the activity of learning).  While attending Jacksonville State University, Plaintiff earned grades sufficient to place him on the Dean's List.  (Simpson Dep. at 16.)   In addition, his high GPA, of at least 3.0, earned him admittance to the Pinnacle Honor Society (the university honor society) and the Phi Alpha Honor Society (the social work honor society).  *Id.*  Although Plaintiff indicates that he experienced some difficulties in school, which he ascribes to an impaired ability to learn due to ADHD and SLD, the results of his efforts shown by his academic achievements and other life experiences undercut any evidence of a significant impairment in his ability to learn. *See Hess v. Rochester Sch. Dist.*, 396 F. Supp. 2d 65, 75 (D.N.H. 2005)(where

---

[15]While Plaintiff testified that it took him three times to pass the exam (Simpson Dep. at 19), the mere fact that Plaintiff had some difficulty in passing the exam does not show that he was substantially limited in the major life activity of learning.  *See Leisen*, 153 F.3d at 808.  Since Plaintiff successfully passed his licensing exam, any difficulty he may have experienced does not establish substantial limitations on his ability to learn.  *See id.*; *see also Davidson*, 133 F.3d at 508 (plaintiff's "oblique references" to the difficulty she experienced in becoming oriented to her job and her need to ask more questions than the average person did not establish substantial limitations on her ability to learn).

plaintiff completed college and post-graduate work and received "A"s in some of the courses he had taken, court stated that his achievements indicate that plaintiff does not have a significant impairment in his ability to learn).

Furthermore, Plaintiff has failed to demonstrate that he is unable to learn or that he is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can [learn] as compared to the condition, manner, or duration under which the average person in the general population can [learn]." *See* 29 C.F.R. § 1630.2(j)(1).  Plaintiff has not presented evidence that his ADHD, SLD, or psychosis substantially limited his ability to learn to a considerable degree as compared to the average person in the general population.  *See Bowen v. Income Producing Mgmt., Inc.*, 202 F.3d 1282, 1287-88 (10th Cir. 2000)(recognizing that, to be significantly restricted in learning, one's skills and abilities must be inferior to those of the average person).

> Employees who fail to learn or learn at a slower pace do not automatically qualify for protection under the [Rehabilitation Act]. Instead, the [Rehabilitation Act] protects only those individuals who present reliable evidence proving a physical or mental impairment that substantially limits their ability to learn

as compared to an average person in the general population.

*Ristrom,* 370 F.3d at 770.  Plaintiff states in a conclusory fashion that his learning disability, which has followed him into adulthood, substantially limits his ability to learn.  The Eleventh Circuit has repeatedly recognized that "[c]onclusory allegations without specific supporting facts have no probative value."  *Hilburn v. Murata Elecs. N. Am., Inc.,* 181 F.3d 1220, 1228 (11th Cir. 1999)(quoting *Evers v. Gen. Motors Corp.,* 770 F.2d 984, 986 (11th Cir.1985)).  Thus, Simpson's conclusory statement is insufficient to establish a finding that his impairments substantially limit his ability to learn.  *See Phillips,* 78 F. Supp. 2d at 1283 (where plaintiff offered no evidence to support his contention that he was substantially limited in his ability to learn other than an assertion that it took him a long time to learn the layout of the store and that he would forget what he was doing, the court held that the allegation lacked any specific facts necessary to support a conclusion that plaintiff's ability to learn was substantially limited so his conclusory allegation was not sufficient).

Therefore, while Simpson may have some adverse abilities in terms of his intellectual functioning, the evidence demonstrates that these

impairments do not substantially limit his ability to learn.  *See Dismore v. Seaford Sch. Dist.*, 2008 WL 205130, at *5 (D. Del. Jan. 25, 2008)(quoting *Collins v. Prudential Inv. and Ret. Servs.*, 119 Fed. Appx. 371 (3d Cir. 2005); *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir.2002)) (stating that even if plaintiff's mental impairment, his ADD and depression, could be characterized as moderate, "nonetheless, '[h]ealth conditions that cause moderate limitations on major life activities do not constitute disabilities under the ADA. To hold otherwise could expand the ADA to recognize almost every working American as disabled to some degree'").  Thus, the Court finds that Plaintiff  failed to present any evidence from which a reasonable jury could find that he is substantially limited in the major life activity of learning.

               b.    Working.

"When the major life activity under consideration is that of working," the United States Supreme Court has held that "the statutory phrase 'substantially limits' requires, at a minimum, that the plaintiffs allege they are unable to work in a broad class of jobs."  *Sutton v. United Air Lines, Inc.*, 527 U.S. at 491.   The EEOC regulations specify that the term

substantially limits means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Cash*, 231 F.3d at 1306 (in order for plaintiff to establish that she was "substantially limited in her work, she must prove that APCO considered her as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes'" when compared to a comparable person)(citing 29 C.F.R. § 1630.2(j)(3)(i); *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th Cir.1998)); *see also Mullins v. Crowell*, 228 F.3d 1305, 1314 (11th Cir. 2004)("whether a plaintiff is substantially limited in the major life activity of working is determined by comparing his ability to perform jobs with the ability of a person without physical limitations who has comparable education, job skills, and talent").  In addition, "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). To be "substantially limited in the major life activity of working, an individual must be precluded from more than one type of job, even if the job foreclosed is the individual's job of choice." *Cash*, 231 F.3d at 1306; *see*

*also Sutton v. United Air Lines, Inc.*, 527 U.S. at 492.

When determining whether an individual is substantially limited in the

major life activity of working, a court may consider:

> (A)    The geographical area to which the individual has
> reasonable access;
> (B) The job from which the individual has been disqualified
> because of an impairment, and the number and types of jobs
> utilizing similar training, knowledge, skills or abilities, within
> that geographical area, from which the individual is also
> disqualified because of the impairment (class of jobs); and/or
> (C) The job from which the individual has been disqualified
> because of an impairment, and the number and types of jobs not
> utilizing similar training, knowledge, skills or abilities, within
> that geographical area, from which the individual is also
> disqualified because of the impairment (broad range of jobs in
> various classes).

*Mullins*, 228 F.3d at 1314 (citing 29 C.F.R. § 1630.2(j)(3)(ii)).  The United

States Supreme Court has interpreted these guidelines to mean that if "jobs

utilizing an individual's skills (but perhaps not his or her unique talents) are

available, one is not precluded from a substantial class of jobs," and the

individual is not considered substantially limited in his ability to work.

*Sutton v. United Air Lines, Inc.*, 527 U.S. at 492.  "Similarly, if a host of

different types of jobs are available, one is not precluded from a broad

range of jobs." *Id.*

Other than the bare allegation in his complaint that he is perceived to be substantially limited in his ability to work, Simpson has not shown any evidence that his mental condition precludes him from working in a broad range of jobs or class of jobs.  Simpson has not pointed to any evidence that he would be precluded from working as a social worker in the State of Alabama.  Rather, the evidence establishes that Simpson has  and continues to have job opportunities available to him as a social worker in Alabama.  At one time, Simpson was on the State of Alabama merit system register for employment as a social worker, ranked in Band 1, in all 67 county DHR departments.  (Simpson Dep. at 42-43.)  Simpson was only taken off the registers for all but two DHR county departments because he requested it.  *Id.* at 56.

In addition to being listed on the merit system register, Simpson has interviewed or been considered for positions with DHR on at least eighteen occasions before requesting the restriction on the state register.  *Id.* at 54-56.  Also, Simpson was interviewed by the Etowah and DeKalb County Departments of Public Health as a social worker, before requesting his name be taken off the Public Health social worker register.  *Id.* at 59-61.  Simpson

also interviewed for social worker positions with Jefferson/Blount/St. Clair Mental Health and UAB.  *Id.* at 61-63.

More importantly, Simpson has not produced any evidence that jobs utilizing his skills are unavailable to him in his area because of his mental condition.  In fact, the evidence supports a conclusion to the contrary.  In his deposition, Simpson testified that after leaving the Marshall County DHR, he was been employed as a social worker by Crossville Nursing Home.  *Id.* at 69-70.  Simpson was also employed at the Bridge in Gadsden, Alabama as a treatment tech following his resignation from DHR.  *Id.* at 74-76.  "Although a plaintiff seeking recovery under the [Rehabilitation Act] is not required to prove a comprehensive list of jobs which [he] cannot perform, the person must provide some evidence beyond the mere existence and impact of a [mental] impairment to survive summary judgment."  *Swain v. Hillsborough County Sch. Bd.*, 146 F.3d 855, 858 (11th Cir. 1998).  Simpson has failed to provide any evidence from which a reasonable jury could find that he is substantially limited in the major life activity of working.

Because Simpson has not established through sufficient evidence that his mental impairment substantially limits *any* major life activity, no

reasonable factfinder could conclude that he meets the requirements of the first definition for "disability" under the Rehabilitation Act.

        2.     Record of such impairment.

Under the Rehabilitation Act's second definition of "disability," an individual is disabled if he has a record of an impairment that substantially limited a major life activity.  According to the EEOC, having a record of a substantially limiting impairment "means [the plaintiff] has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). A plaintiff cannot meet the requirements of this definition through the production of evidence showing only that he has a record of an impairment. Rather, the record must demonstrate an impairment that substantially limited one or more major life activities.  *Hilburn*, 181 F.3d at 1229 (11th Cir. 1999).  In addition, the record must be relied on by the employer.  *Id*.

Plaintiff contends that he has a record of an impairment because of his extensive medical history as detailed in the Vocational Rehabilitation report.[16]   In addition, Plaintiff alleges that he has a record of a disability

---

[16]Plaintiff does not argue that he was misclassified as having a disability.

through diagnoses and an IEP while in school.  However, Plaintiff has failed to show a record exists that indicates an impairment that substantially limited one or more major life activities.  Even if he was able to demonstrate the existence of such a record, he has not offered any evidence that DHR relied on that record.  Assuming that everything Plaintiff says is true, a history of ADHD and an IEP while in school only establish that the plaintiff suffered an impairment—not that the impairment substantially limited any major life activity.  Because Plaintiff has not provided any evidence from which a reasonable factfinder could conclude that he had a record of an impairment that substantially limited a major life activity upon which DHR relied, he cannot meet the requirements for the second statutory definition of "disability" under the Rehabilitation Act.

In addition, the Court is of the opinion that the evidence "is insufficient to establish that a record of impairment exists, especially when this [c]ourt has already found that [Simpson's] impairments [themselves are] not legally disabling." *Ross v. GTE Directories Corp.*, 73 F. Supp. 2d 1342, 1349 (M.D. Fla. 1999).  *See, e.g.*, *EEOC v. R. J. Gallagher Co.*, 181 F.3d 645, 655 (5th Cir. 1999)(it is not enough to show a record of diagnosis; there must

be a record of impairment that substantially limits one or more major life activities); *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998)(multiple hospitalizations plus medication, work restrictions, and inability to perform manual tasks did not create a record of substantially limiting impairment); *Burch v. Coca Cola Co.*, 119 F.3d 305, 317 (5th Cir. 1997)(a record of hospitalization, without a finding of actual substantial limitation, does not suffice to demonstrate a record of disability); *Olson v. Gen. Elec. Aerospace*, 101 F.3d 947, 953 (3d Cir. 1996) (a diagnosis alone is insufficient; the plaintiff must show that the diagnosed impairment substantially limited a major life activity).  Because Simpson's documentation of his impairment reflects nothing more than a diagnosis, Plaintiff cannot satisfy the record-of-impairment definition of disability.

> 3.   Perceived as having such an impairment.

The ADA's final definition of "disability" includes individuals who are "regarded as" disabled.  Such a person is defined by the statute as one who "(1) has an impairment that does not substantially limit a major life activity, but is treated by an employer as though it does; (2) has an impairment that limits a major life activity only because of others' attitudes towards the

impairment; or (3) has no impairment whatsoever, but is treated by an employer as having a disability as recognized by the [Rehabilitation Act.]" *Hilburn*, 181 F.3d at 1230. The Eleventh Circuit has held that, "for a plaintiff to prevail under this theory, he must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach*, 371 F.3d at 1360 (citing *Sutton*, 185 F.3d at 1209). "As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual." *Id.* Therefore, a plaintiff must establish that the employer viewed him as having a substantially limiting impairment. *Gordon*, 100 F.3d at 916. "To show that he was regarded as substantially limited in his ability to work, plaintiff must prove that [defendant] considered [him] as significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities." *Bonner v. Home Depot*, 323 F. Supp. 2d 1250, 1262 (S.D. Ala. 2004)(quoting *Stedman v. Bizmart, Inc.*, 219 F. Supp. 2d 1212 (N.D. Ala. 2002); *Cash*, 231 F.3d at 1306).

Plaintiff alleges that he was perceived as having a disability which

substantially limits his ability to work.   Simpson has presented no evidence

that Defendants perceived him as disabled in any life activity.  The fact that

DHR allegedly had knowledge of his diagnosis, standing alone, does not

establish that it perceived him as substantially limited.   *Blackston v.*

*Warner-Lambert Co.*, 2000 WL122109, at *4-5 (N.D. Ala. Jan. 26, 2000),

*aff'd* 228 F.3d 418 (11th Cir. 2000).  There is simply no evidence to suggest

that Defendants entertained a misperception about Plaintiff's mental

impairment, or that they believed Plaintiff was substantially limited in any

major life activity.   The "mere fact that an employer is aware of an

employee's impairment is insufficient to demonstrate either that the

employer regarded the employee as disabled, or that such a perception

caused [an] adverse employment action."  *Kelly v. Drexel Univ.*, 94 F.3d

102, 109 (3d Cir. 1996).

       In addition, Simpson has not shown that Defendants regarded him as

unable to work in a broad range or class of jobs or that they believed there

were no jobs available to him in the area because of his disability.  In fact,

the evidence shows that Wayne Sellers, his supervisor at Marshall County

DHR, would recommend him for re-employment and would give him good

references when Simpson later applied for other social worker positions. (Sellers Dep. at 31.)  Thus, Plaintiff cannot establish that he was perceived as disabled under the Rehabilitation Act.

Because Plaintiff has failed to adduce sufficient evidence from which a reasonable factfinder could conclude that he is disabled within the meaning of the Rehabilitation Act, he is not entitled to the protection of the Rehabilitation Act.  The court need not, therefore, analyze whether Plaintiff can establish any of the other elements of a prima facie case under the Rehabilitation Act. Summary judgment is due to be granted as to all of Plaintiff's Rehabilitation Act claims.

V.     Conclusion.

For the reasons stated above, Defendants' Motion for Summary Judgment is due to be granted.  A separate order in conformity with this opinion will be entered.

Done this 31st day of March 2008.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671